# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

N<u>o</u> 06-CV-0526 (JFB) (MLO)

————————————

### ELIZABETH BOEY CHAU, M.D.,

Plaintiff,

VERSUS

### WEST CARVER MEDICAL ASSOCIATES, P.C., MARC WEINBERG, ROBIN THOMPSON, PAUL BRODSKY, MARC HAZAN, JED WEINBERG, ALAN SCHULLER, DAVID SACKNOFF AND JOHN WISNIEWSKI,

Defendants.

————————————

MEMORANDUM AND ORDER
December 21, 2006

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Elizabeth Chau, M.D. (hereinafter "Chau" or "plaintiff"), brings this action against defendants West Carver Medical Associates P.C. (hereinafter "WCMA"), Marc Weinberg, Robin Thompson, Paul Brodsky, Marc Hazan, Jed Weinberg, Alan Schuller, David Sacknoff and John Wisniewski (collectively "defendants") for employment discrimination on the basis of gender and disability, and for retaliation under the Americans with disabilities Act of 1990 ("the ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendants move to compel arbitration and to stay the current proceedings pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 or, in the alternative, to dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the Court grants defendants' motion to compel arbitration and stay the current proceedings. Defendants' motion to dismiss is denied as moot.

## I. Background

### A. Facts

On February 5, 2003, plaintiff entered into a contract entitled "Shareholder's and Employment Agreement of West Carver Medical Associates, P.C." (hereinafter "the Agreement"), effective July 1, 2002, along with eight other doctors, to form WCMA, a professional corporation under the laws of the state of New York. (Agreement attached as Rosen Aff. Ex. A; Rando Decl. Ex. 1.) Pursuant to the Agreement, plaintiff was an officer and owner of the corporation. (*Id.*) The agreement contains an arbitration provision that provides:

> Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the State of New York, counties of Nassau or Suffolk, in accordance with the rules then governing of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

(*Id.*)

Plaintiff was employed as a primary care physician by WCMA from May 1995 to April 2005. (Compl. ¶ 13.) On January 6, 2003, plaintiff sustained spinal, back and wrist injuries as a result of an automobile accident. (*Id.* ¶¶ 39-40.) Plaintiff alleges that defendants discriminated against her on the basis of her age and disability. (*Id.* ¶¶ 25-29.) According to the complaint, on January 4, 2005, defendant Marc Weinberg told plaintiff "you . . . suck my blood with your disability problems and cannot work here." (*Id.* ¶ 43.) On January 6, 2005, defendants Marc Weinberg and Robin Thompson told plaintiff, "you have been resented so much during the past years because of your disabilities." (*Id.* ¶ 44.) Plaintiff alleges that defendants refused to make reasonable accommodation for her disability, acted with hostility toward her, and constructively discharged her because of her disability. (*Id.* ¶ 45.) Plaintiff also alleges that defendants harassed and criticized plaintiff with respect to her female conditions of pregnancies, maternity leave and motherhood. (*Id.* ¶ 81.) According to the complaint, on January 4, 2005, defendants told plaintiff, "you have three months to return to work full time or you are out." (*Id.* ¶ 87.)

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2005, alleging discrimination on the basis of disability, perceived disability, and sex, and retaliation, under the ADA and Title VII in connection with her employment with defendants. (*Id.* ¶ 33.) The EEOC issued a "right to sue" letter that was received by plaintiff on December 2, 2005. (*Id.* ¶ 34.)

### B. Procedural History

Plaintiff filed the instant action on February 6, 2006. On October 13, 2006, defendants filed the instant motion. The Court heard oral argument on December 15, 2006.

## II. Discussion

"In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills v. Stockbridge Fabrics*

*Co.*, 636 F.2d 51, 54, n.9 (3d Cir. 1980)). Therefore, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). In the instant case, there are no issues of fact as to the making of the Agreement; rather, the issue presented to the Court by the parties is a matter of contract interpretation.

The Second Circuit has instructed district courts to conduct the following inquiry to determine whether the instant action should be sent to arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus.*, 387 F.3d at 169 (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)). Here, plaintiff does not argue that Congress intended the federal statutory claims asserted by plaintiff to be non-arbitrable. Thus, the Court turns to the only considerations at issue – whether the parties agreed to arbitrate, and if so, the scope of that agreement.

## A. THE PARTIES AGREED TO ARBITRATE

Plaintiff contends that the parties did not agree to arbitrate. Specifically, plaintiff argues that under the Agreement, she did not agree to arbitrate in her *individual* capacity, only her *official* capacity. In addition, plaintiff similarly argues that the individual defendants did not sign the Agreement in their individual capacity, only their official capacity, and thus, are not entitled to compel arbitration. For the reasons that follow, the Court finds that the parties agreed to arbitrate in their individual capacities.

"It is common ground that 'signing an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally.'" *McCarthy v. Azure*, 22 F.3d 351, 361 (1st Cir. 1994) (quoting *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988)). "Under general principles of federal contract law, the court must review 'the parties' intent as expressed in the language of the contract documents.'" *Matter of Arbitration Between Standard Tallow Corp. and Kil-Mgmt. A/S*, 901 F. Supp. 147, 150 (S.D.N.Y. 1995) (quoting *McCarthy*, 22 F.3d at 355).

As noted above, the Agreement is titled "Shareholders' and Employment Agreement of West Carver Medical Associates, P.C." Only one of the nine signatories, Paul K. Brodsky, M.D., signed the Agreement twice, once as Paul K. Brodsky, M.D., President, and the second time as Paul K. Brodsky, M.D. (*See* Agreement at 17.) The seven other signatories only signed their names with the "M.D." designation.[1] Relying on *McCarthy*, 22 F.3d 351, plaintiff contends that because plaintiff's and the individual defendants' respective signature lines contain the designation "M.D.," they each entered the Agreement as licensed physician-shareholders

---

[1] Although the Agreement indicates that plaintiff's position as officer of the corporation at the time the Agreement was signed was "Assistant Secretary," plaintiff did not sign the Agreement as "Assistant Secretary."

of WCMA and are non-signatories to the Agreement in their personal/individual capacities. (Pl.'s Mem. at 6; *see* Agreement at 1, 17-18.) Plaintiff's analysis, however, is misguided.

In *McCarthy*, the United States Court of Appeals for the First Circuit affirmed the district court's refusal to order arbitration where a corporate officer, having signed an agreement containing an arbitration clause in his official capacity, sought to compel arbitration of claims that were brought against him in his individual capacity. 22 F.3d at 353. In *McCarthy*, however, it was unambiguous that defendant had signed the Agreement in his official capacity as "Chairman." *Id.* at 356. More specifically, the Court held that

> [Defendant] signed the Purchase Agreement solely in his capacity as an agent for a disclosed principal – that is, as "Chairman" of Theta II – and not in his personal capacity; and it is settled beyond peradventure that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement.

*Id.* (citing *New York Ass'n for Retarded Children, Inc. v. Keator*, 606 N.Y.S.2d 784, 785 (App. Div. 1993) (finding corporation, but not individual, bound when president of corporation signed contract only on a line indicating his official capacity); *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 176 N.E.2d 74, 76, 217 N.Y.S.2d 55 (N.Y. 1961) (finding no individual liability where defendant signed only as president of corporation and did not otherwise explicitly indicate in the contract an intent to be bound personally)). *McCarthy* in

no way supports plaintiff's proposition that the designation "M.D." indicates an official capacity.[2] Instead, the case lends support for the opposite proposition given that Mr. Brodsky signed the Agreement twice, once as "President," (representing his official capacity), and once using only his name followed by the "M.D." designation (representing his individual capacity). If the designation "M.D." was intended to establish that he was signing in his official capacity, then it would have been superfluous to have him also sign as "President."[3] *Cf. Dulik v.*

---

[2] Plaintiff also cites *Califano v. Shearson Lehman Brothers,Inc.*, 690 F. Supp. 1354 (S.D.N.Y. 1998), stating that defendants should not be permitted to "essentially pierce the . . . corporate veil." (Pl.'s Mem. at 7.) In *Califano*, however, the court examined whether a customer agreement containing an arbitration provision for plaintiff's personal account required arbitration of a dispute concerning a corporate account despite the fact that no customer agreement was executed on behalf of the corporation. *Id.* at 1355. In recognizing that "[c]ourts do not lightly disregard the corporate entity even in deference to the strong policy favoring arbitration," the court found that plaintiff's personal agreement did not bind the corporation. *Id.* Here, however, plaintiff did not sign the Agreement on behalf of WCMA; rather, she signed the Agreement on behalf of herself, and the very terms of the Agreement outline plaintiff's personal rights as a shareholder-employee. Thus, by holding that plaintiff is a signatory to the Agreement, the Court is *not* disregarding the corporate entity.

[3] The Court further notes that the fact that plaintiff is a licensed physician does not serve to distinguish plaintiff in her official versus her individual capacity. The designation of "M.D." indicates that an individual received a degree as a Doctor in Medicine. Whether someone who has received such a degree uses the designation after his or her signature in no way establishes, by

*Amante*, 570 N.Y.S.2d 590, 591 (App. Div.

itself, that one is signing a document in an "official capacity" versus an "individual capacity." Instead, the designation of "M.D." after one's signature under these circumstances simply reflects the earning of that degree, regardless of whether the document is signed in an official capacity. In other words, plaintiff and defendants are licensed physicians in bother their individual and official capacities. Further, contrary to plaintiff's assertion, it does not follow that because N.Y. Bus. Corp. Law § 1507 requires each shareholder of a professional corporation to be a licensed professional in the particular profession, any licensed professional who signs an agreement is automatically signing in an official capacity. Here, pursuant to N.Y. Bus. Corp. Law § 1507, plaintiff, as a shareholder of a professional corporation, is a licensed professional. Plaintiff provides no support for her argument that the professional corporation would be rendered a "sham" (*see* Pl.'s Mem. at 8) if it is interpreted as binding against each shareholder personally, and the Court finds that such a conclusion would be illogical given that the Agreement is a Shareholders' *and* Employment Agreement. As discussed at oral argument, a similarly anomalous situation would be created under plaintiff's logic where a General Counsel to a corporation signs an employment agreement containing an arbitration clause with the corporation using the designation "Esquire" after his name, but not his official position as "General Counsel." According to plaintiff's argument, because "Esquire" was used, any individual employment claims by the lawyer would not be arbitrable under that agreement. If plaintiff's argument was adopted, the same rationale would also prevent a professor from signing an employment contract in his individual capacity if "PhD" appeared after his name. Because the purpose of an employment contract is to govern the employment relationship between the *company* and the *individual*, there is no basis for finding plaintiff signed in her official capacity in this Agreement based solely upon the reference to a professional license or educational degree.

1991) (finding that a party, by signing the agreement twice, intended to bind both his corporation and himself). Furthermore, unlike the defendant in *McCarthy*, plaintiff in the instant action did not sign the Agreement as an *agent* of WCMA or any other corporation; rather, plaintiff signed the Agreement as a shareholder and employee of WCMA to establish her rights by and between WCMA and the other employee/shareholders of WCMA.[4] (*See* Agreement at 1.)

### B. THE BROAD SCOPE OF THE ARBITRATION CLAUSE ENCOMPASSES PLAINTIFF'S CLAIMS

Plaintiff argues that, even if the Court concludes that plaintiff signed the Agreement in her personal capacity, the arbitration clause at issue does not encompass the claims asserted by plaintiff in the complaint. As stated *supra*, the arbitration clause provides: "Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration." (*See* Agreement at 17.) For the reasons set forth below, the Court finds, based upon this broad language, that this dispute is arbitrable.

The Second Circuit provides the following guidelines for inquiring into the scope of an arbitration clause:

> "A disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the court." *Howsam v. Dean Witter*

---

[4] Following plaintiff's argument that she did not sign the Agreement in her personal capacity, plaintiff argues that she should not be compelled to arbitrate claims she brings for violations of personal rights. However, as stated above, the Court finds that plaintiff did sign the Agreement in her personal capacity.

*Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L.Ed.2d 491 (2002). Our inquiry is governed by the principle that, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitration. *Moses H. Cone Mem'l Hosp. v Mercury Constr. Corp.*, 460 U.S. 1, 24025, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). This principle is based upon the fact that the FAA is an expression of a "strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartfor Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001).

*JLM Indust.*, 387 F.3d at 171. However, a party cannot be required to submit a dispute to arbitration which he or she has not agreed to submit. *AT&T Techs., Inc. v. Comm'n Workers of Am.*, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). "In deciding whether parties to a contract agreed to arbitrate a particular matter, 'courts should generally apply state-law principles that govern the formation of contracts.'" *Elwell v. Google, Inc.*, No. 05-CV-6487 (DLC), 2006 U.S. Dist. LEXIS 3114 (S.D.N.Y. Jan. 31, 2006) (quoting *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000)).

Plaintiff argues that language "arising out of, or relating to this Agreement" indicates an intent to have a narrow arbitration clause. (Pl.'s Mem. at 10.) The Court disagrees. "[T]he prototypical broad arbitration provision is one in which the parties agree to arbitrate any dispute, controversy or claim arising under or in connection with the parties' agreement." *Camferdam v. Ernst & Young Intern., Inc.*, No. 02-CV-10100 (BSJ), 2004 WL 1124649, at *1 (S.D.N.Y. May 19, 2004) (finding an arbitration clause narrow where it limited disputes to those relating to tax services as opposed to claims arising out of the parties' agreement) (citing *Oldroyd*, 134 F.3d at 76). In *Oldroyd*, the Second Circuit held that an arbitration clause providing that "any controversy or claim arising under or in connection with [plaintiff's] employment agreement" was "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability" and, thus, plaintiff's retaliatory discharge claim was "presumptively within the scope of the arbitration clause." 134 F.3d at 76; *see also Mehler*, 205 F.3d at 49 (finding that a clause providing for arbitration of "'any controversy or claim between [the parties] arising out of or relating to' the Agreement" was "indisputably broad"). "Because [this Court] cannot say 'with positive assurance' that a claim for [employment discrimination and tortious interference are] not within the scope of the arbitration clause, [the Court] cannot say that the presumption in favor of arbitration has been overcome in this case." *Oldroyd*, 134 F.3d at 77; *see also Stevenson v. Tyco Int'l (US) Inc. Supplemental Executive Retirement Plan*, No. 04-CV-4037 (KMK), 2006 WL 2827635, at *6 (S.D.N.Y. Sept. 29, 2006) ("In the end, as the Second Circuit has emphasized, '[a]rbitration should be ordered, unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'") (quoting *Genesco*, 815 F.2d at 847) (internal quotation omitted) (alteration in original)). Accordingly, the Court finds that the arbitration clause in this case is sufficiently broad, such that it includes the dispute at issue here and, thus, the Court must

compel arbitration.

To the extent plaintiff argues that, because she is not alleging a breach of the Agreement itself, she is alleging matters not within the purview of the arbitration clause, the Court finds that argument unpersuasive, especially when the other provisions of the Agreement are examined. The Second Circuit has clarified that arbitration claims are not "limited to those that constitute a breach of the terms of the contract at issue." *Mehler*, 205 F.3d at 50; *accord JLM Indust.*, 387 F.3d at 176. Instead, the Court must focus on the factual allegations in the complaint, not the legal causes of action, to determine whether they "touch matters" that are covered by the Agreement. *Genesco, Inc. v. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987); *accord Oldroyd*, 134 F.3d at 77. Each of plaintiff's claims relate to plaintiff's employment at WMCA. The Agreement is titled "Shareholders and Employment Agreement" and contemplates shareholder-employee disabilities, salaries, and termination of employment, among other topics. (*See* Agreement at 8-11, 12-13.) Thus, the Court finds that plaintiff's claims touch matters within the scope of the Agreement.

## C. MOTION TO DISMISS

Because the Court grants defendants' motion to compel arbitration, the defendants' motion to dismiss is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to compel arbitration is granted and the parties are directed to arbitrate this dispute according to the provisions of the Agreement. Because all of plaintiff's claims are subject to arbitration, this litigation is stayed pending arbitration.[5]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 21, 2006
Central Islip, New York

* * *

_____

[5] The Federal Arbitration Act provides in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.